## UNITED STATES v. BURK.

### No. 7.

District Court, D. Delaware.

Nov. 18, 1941.

Joseph T. Burk was indicted for an offense, and he filed a plea and an amended plea in abatement.

Plea in abatement, as amended, overruled.

Stewart Lynch, U. S. Atty., of Wilmington, Del., for plaintiff.

H. Albert Young, of Wilmington, Del., for defendant.

KALODNER, District Judge.

By plea in abatement (as amended) the defendant contends (1) that the Grand Jury

for the September Term, 1941, was illegally constituted and that the indictment returned against him was therefore invalid, and (2) that the defendant was compelled to appear and testify before the Grand Jury in violation of his constitutional rights.

As to the first contention:

The clerk of the court, called by the defendant, testified that on September 16, 1941, only sixteen persons duly summoned reported for service on the Grand Jury; that the then presiding judge gave to the United States Marshal the names of five additional persons to serve on the Grand Jury; that of the five, one reported for service and became the seventeenth member of the Grand Jury. The additional juror was a person of good reputation resident in the community.

■ In support of his plea in abatement the defendant asserts that there was a non-compliance with section 282 of the Judicial Code, Section 419, Title 28 U.S.C.A.[1], in that the additional juror was not summoned "from the body of the district".

There was no contention by the defendant that there was any prejudice to him as a result of the procedure; his objection being predicated solely on non-compliance with section 419, supra.

Numerous cases were cited by the defendant in support of his plea in abatement; the cases, however, are not applicable.

Section 2 of the Act of April 30, 1934, section 554a, 18 U.S.C.A., which seems to have escaped the attention of counsel for the defendant, is dispositive of the plea in abatement.

That section reads as follows:

"§ 554a. Same [Indictments and presentments; by twelve grand jurors]; objection on ground of unqualified juror barred where twelve qualified jurors concurred; record of number concurring

"No plea to abate nor motion to quash any indictment, upon the ground that one or more unqualified persons served upon the grand jury finding such indictment, shall be sustained if it appears that twelve or more jurors, after deducting the number so disqualified, concurred in the finding of said indictment: Provided, however, That no juror shall be permitted to testify, in this connection, as to whether he or any other individual juror voted for or against the finding of such indictment, but it shall be the duty of the foreman of each grand jury to keep a record of the number of grand jurors concurring in the finding of any indictment and to file such record with the clerk of the court at the time the indictment is returned. Such record shall not be made public except on order of the court. (Apr. 30, 1934, c. 170, § 2, 48 Stat. 649.)"

It is undisputed that sixteen of the seventeen Grand Jurors who voted the indictment were properly summoned and qualified. Under section 554a, supra, the mere fact that an unqualified person served upon the Grand Jury does not void the indictment. While there was no specific evidence that twelve or more qualified jurors concurred in the finding of the indictment, where the record shows that the Grand Jury found the indictment on their oaths, the intendment and legal effect and presumption is that it was found on proper evidence, with due deliberation, and by the concurrence of twelve of their number. See United States v. Wilson, C.C. Ohio 1855, Fed.Cas.No.16,737.

Applicability of Section 2 of the Act of April 30, 1934, supra, in situations akin to the instant issue, was discussed in United States v. Parker, 3 Cir., 103 F.2d 857, certiorari denied 307 U.S. 642, 59 S.Ct. 1044, 83 L.Ed. 1522.

■ As to the defendant's second contention, that he was compelled to appear and testify before the Grand Jury in violation of his constitutional rights, and specifically in violation of the 5th Amendment to the Constitution of the United States,

---

[1] "§ 419. (Judicial Code, section 282.) Grand jurors; number when less than required number. Every grand jury impaneled before any district court shall consist of not less than sixteen nor more than twenty-three persons. If of the persons summoned less than sixteen attend, they shall be placed on the grand jury, and the court shall order the marshal to summon, either immediately or for a day fixed, from the body of the district, and not from the bystanders, a sufficient number of persons to complete the grand jury. And whenever a challenge to a grand juror is allowed, and there are not in attendance other jurors sufficient to complete the grand jury, the court shall make a like order to the marshal to summon a sufficient number of persons for that purpose. (R.S. § 808; Mar. 3, 1911, c. 231, § 282, 36 Stat. 1165.)"

that contention is premised on these circumstances:

When the defendant failed to comply with a subpoena duces tecum directing him to appear and bring with him records of certain corporations with which he was connected, the United States Attorney sent him a telegram reading as follows (p. 8, N. T.): "If you and Miss Viala do not respond to subpoena I will ask that you be indicted for contempt of court. If you are absent it is at your peril."

The defendant contends that this telegram constituted a compulsion to "testify". That contention is without merit. The telegram made a demand for compliance with the subpoena to produce the records, and did not in any way constitute compulsion to testify in violation of the defendant's constitutional rights.

█ As further evidence of "violation of his constitutional rights", the defendant testified that he appeared before the Grand Jury and brought with him certain corporate records which he was asked to identify merely as "the general ledger, cash receipts book, check book, etc." No questions were asked of him as to the contents of these books, or any circumstances connected with them. During these identification proceedings of the corporate records, nothing was said as to the defendant's "constitutional rights" either by the United States Attorney, the defendant, or anyone else in the Grand Jury room. At the conclusion of the identification proceedings with respect to these corporte records, the defendant was asked by the United States Attorney as to whether he had any additional records, and he then testified that he had a "personal book". The United States Attorney thereupon, according to the defendant's own testimony, made this statement to him (p. 12, N.T.):

"A. * * * 'I want you to understand,'—he told me he had the right to make me bring in any record of the corporation, but he had no right to make me produce my own personal records.

"By the Court:

"Q. He told you that? A. Mr. Lynch told me he had a right to make me produce the records of the corporation, but not my own personal records. Then I turned around and told Lynch and the Grand Jury I had nothing to hide, and handed the record to him.

"Q. Were you questioned with respect to that record? A. No.

"Q. Then the sum total of your testimony is that you identified certain records which you produced or were already on hand, and you identified those records? A. Yes and I produced my own personal record, that book.

"Q. No questions were asked of you of the operation of the company or your own activity? A. No, sir."

The defendant's testimony discloses that he was before the Grand Jury "no more than ten or fifteen minutes". The defendant was asked by the court (p. 11, N.T.):

"Q. During that ten or fifteen minutes did they question you as to the operations of the company, the details of operation, or did they merely ask you with respect to the papers and data you told us about? A. He asked me to produce those records.

"Q. He devoted himself to that? A. Yes, and he asked me to produce them."

Earlier, the defendant had testified, in response to the question (p. 11, N.T.):

"Q. You were merely asked about the records? A. Yes.

"Q. That was the sum total of your testimony? A. Yes."

It is unnecessary to do more than quote the testimony of the defendant himself with respect to what occurred before the Grand Jury.

█ It is well settled that the fact that a defendant was called as a witness before a Grand Jury does not give him immunity from prosecution on that account. See Mattes v. United States, 3 Cir., 79 F.2d 127; O'Connell v. United States, 2 Cir., 40 F.2d 201, 205. It is also well settled that he who asserts the "privilege of silence" cannot speak and then contend that he was deprived of his constitutional rights. See United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 64, 76 L.Ed. 210, 82 A.L.R. 1376, where it was said: "The privilege of silence is solely for the benefit of the witness and is deemed waived unless invoked."

See, also, Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann. Cas.1912D, 558; Dreier v. United States, 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784; Heike v. United States, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450, Ann.Cas.1914C, 128; Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423.

The ruling in the instant case is not in conflict with that of Judge Nields of this District in United States v. Goldsmith et

al.,[2] No. 1 March Term 1933 (filed February 6, 1934). The facts in that case were entirely different than in the present situation.

The defendant's own testimony clearly discloses that there is no basis for his contention that he was deprived of his constitutional rights.

For the reasons stated the plea in abatement (as amended)[3] is overruled, and the defendant is ordered to appear for arraignment on November 26, 1941, at 10 o'clock A.M., on the indictment returned against him by the Grand Jury for the September Term, 1941.

---

[2] No opinion for publication.

[3] The defendant originally filed a plea in abatement which raised only the question of violation of his constitutional rights. He later filed an amended plea in abatement attacking the Grand Jury as illegally constituted. In this opinion and in the order made I have considered the plea in abatement (as amended) as incorporating the original plea in abatement, which merely raised the question of privilege.